UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| PLEAS LUCIAN KAVANAUGH, | CIVIL ACTION NO. 5:12-CV-74 |
|     Plaintiff, | |
| V. | **MEMORANDUM OPINION & ORDER** |
| LEXINGTON FAYETTE URBAN COUNTY GOVERNMENT, et al., | |
|     Defendants. | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on two motions for summary judgment brought by two different groups of defendants. One of the motions is brought by the Lexington-Fayette Urban County Government ("LFUCG") and Ronnie J. Bastin ("Chief Bastin"). Chief Bastin was sued individually and in his official capacity as Chief of LFUCG Division of Police. (DE 43). The other is brought by Elizabeth Adams ("Detective Adams") and William Persley ("Detective Persley"). Both Adams and Persley are LFUGG police officers, who have been sued in their individual and official capacities along with other John Doe(s). (DE 44). For the reasons explained below, both motions for summary judgment will be granted.

## I. BACKGROUND

This case arose from two incidents that occurred within a couple of months of each other in downtown Lexington, Kentucky. The first occurred early in the morning hours of October 24, 2009, when Morgan Persley, the daughter of defendant Detective William Persley, left a downtown bar after fighting with her boyfriend. Morgan, who was sitting alone on a Lexington street, had noticed a man walk past her several times before he grabbed her, wrapped his arm around her throat, and pulled her into a concrete driveway.

The man called her a "bitch" and tried to drag her to the rear of a building, but Morgan escaped. (DE 44-2). She did not see her attacker's face and there were no developments in the investigation of the incident until December, 2009 when another woman was attacked in downtown Lexington. (DE 45-9, p. 52).

On December 8, 2009, Laura Baker was waiting for a bus at the Lexington Transit Center when a man sat down beside her and asked if she knew where he could get some "dope." When she replied no, he pulled out a large baggie that appeared to be cocaine. The man then pulled out a pocket knife, pressed it to Laura's side and told her that she was leaving with him. About that time, a bus arrived and Laura was able to escape onto the bus as the man fled. Laura described the suspect as a 6'3" slim light-skinned black male, who was about 28 to 32 years old. She said that he was wearing a black bubble coat, white shirt, dark jeans, and a baseball cap. She noted that he wasn't wearing glasses and didn't have facial hair, but added that he had a gold tooth and a silver earring. (DE 44-5). The day after the attack, Laura assisted Detective Kari Leah Anderson in making a composite sketch of the perpetrator. (DE 44-5, 49-1).

Detective Adams took lead on the first incident involving Morgan Persley, and Detective Persley took the lead on the second incident involving Laura Baker. (DE 45-5, p. 71). Upon reviewing the composite sketch, Detective Adams thought the drawing resembled Pleas Kavanaugh, a suspect in an earlier investigation. (DE 45-5, p. 109).

Defendants assert that Adams developed a "six-pack" line-up with photographs of six suspects, including Kavanaugh. (DE 45-5, p. 110). On December 10, 2009, Morgan and Laura were shown the "six-pack" line-up and both identified Kavanaugh as the perpetrator. (DE 44-10, 44-11). Kavanaugh contends, however, that the photographic line-up never took place.

On December 10, 2009, Detective Adams swore out a criminal complaint against Kavanaugh for robbing Morgan Persley, and Detective Persley swore out a criminal complaint against Kavanaugh for unlawfully imprisoning Laura Baker. (DE 43-7, 43-8). Subsequently, warrants for Kavanaugh's arrest were issued by the Fayette District Court. (DE 43-9). Plaintiff was arrested on December 15, 2009. (DE 44-15).

Following plaintiff's arrest, Detective Adams sought and obtained a search warrant for two sets of buccal swabs that contained plaintiff's DNA. Plaintiff's buccal swabs were then sent to the Kentucky State Police Laboratories to be compared with blood evidence obtained from the Morgan Persley crime scene. (DE 44-16). Thereafter, Adams and Persley testified before a Fayette County grand jury, which indicted Kavanaugh. (DE 45-5, p. 121). Detective Adams told the grand jury that the DNA results comparing plaintiff's buccal swabs with the blood evidence from the crime scene involving Morgan were not available. (DE 45-5, p. 122). Kavanaugh asserts that Adams's grand jury testimony was false because the DNA test results had become available several weeks earlier and contained only Morgan's DNA. (DE 44-17).

Plaintiff was first tried for the robbery of Morgan. Before trial, however, plaintiff moved to suppress Morgan's out-of-court identification based on the photographic line-up. The trial court suppressed Morgan's identification of Kavanaugh, finding the photographic line-up impermissibly suggestive because only two of the six photographs presented were of light-skinned African American males. The court, however, permitted Morgan to identify her assailant during the proceedings. (DE 43-13). Although Morgan positively identified Kavanaugh as the perpetrator during the trial, the jury found in favor of plaintiff and acquitted him of the robbery charge on August 25, 2011. After Kavanaugh's acquittal in

Morgan's case, the prosecutor dismissed the unlawful imprisonment charge concerning Laura Baker.

On March 8, 2012, Kavanaugh filed this action. Despite having asserted approximately ten distinct causes of action, plaintiff now, in his response to the motions for summary judgment, asserts only claims of malicious prosecution under state law and 42 U.S.C. § 1983 and violations of 42 U.S.C. § 1983 based on LFUCG's policy or custom of inaction in responding to officer dishonesty and failure to train or supervise the officers. For the reasons that follow, the Court will grant defendants' motions for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving parties bear the initial burden and must identify "those portions of the pleadings, dispositions . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322–25. Once the movant meets the initial burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of

evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## III. ANALYSIS

### A. Malicious Prosecution as a Fourth Amendment Violation under 42 U.S.C. § 1983

Kavanaugh concedes that he is "not alleging that Defendant Bastin maliciously prosecuted Plaintiff." (DE 43-31, p. 7). Thus, summary judgment in favor of Chief Bastin is appropriate as to plaintiff's § 1983 malicious prosecution claim.

Kavanaugh's § 1983 claim for malicious prosecution against LFUCG and individual defendants in their official capacities fails because a governmental entity cannot be held liable under § 1983 for the constitutional torts of its employees under a *respondeat superior* theory. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, liability attaches to LFUCG only if Kavanaugh can prove independent wrongdoing by LFUCG through a policy or custom that was the moving force behind the alleged deprivation of rights. *See id.* at 694. Here, Kavanaugh has not asserted any facts indicating that LFUCG had any policy or custom of maliciously prosecuting individuals. Therefore, to the extent that Kavanaugh asserts a violation of his Fourth Amendment rights under § 1983 based on malicious prosecution against LFUCG or any of the defendants in their official capacities, summary judgment is appropriate.

Consequently, only plaintiff's § 1983 malicious prosecution claim against Detectives Adams and Persley in their individual capacities remains for this Court's evaluation. To sustain a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must show

5

that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute[;]" (2) "there was a lack of probable cause for the criminal prosecution[;]" (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence[;]" and (4) "the criminal proceeding [was] resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (internal quotations omitted). Because Detectives Adams and Persley would succeed on their summary judgment motion if they disprove any one of these essential elements, the Court will examine each element in turn. *Celotex Corp.*, 477 U.S. at 323 (stating that "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

### *i. No Probable Cause to Initiate Criminal Proceedings*

To demonstrate a lack of probable cause, Kavanaugh must show that Detectives Adams and Persley lacked probable cause to arrest him and to initiate criminal proceedings against him. *Sykes*, 625 F.3d at 310–11. To determine whether probable cause existed, courts must view "the totality of the circumstances at the time of the Plaintiff['s] arrest and through the time that the criminal proceeding against [him] commenced . . . ." *Id.* at 311. An officer has probable cause when "the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States,* 361 U.S. 98, 102 (1959).

Detectives Adams and Persley argue that they had probable cause to arrest and to initiate proceedings against Kavanaugh because both Morgan Persley and Laura Baker executed forms positively identifying Kavanaugh as the perpetrator after viewing a "six-pack" photographic line-up. (DE 44-10, 44-11, and 44-12). The detectives contend that

6

eyewitness identifications "are generally entitled to a presumption of reliability and veracity[,]" *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999), so probable cause existed to pursue the charges against plaintiff. *See id.* ("An eyewitness identification will constitute sufficient probable cause 'unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.' "). Further, warrants for plaintiff's arrest were issued by the Fayette District Court. (DE 43-9).

Kavanaugh argues that two pieces of evidence demonstrate that Detectives Adams and Persley did not have evidence of eyewitness identification. First, Kavanaugh points to an affidavit of his criminal defense counsel, David Zorin, as evidence that no photographic line-up was performed. In his affidavit, Zorin states that during Kavanaugh's initial interview with Detective Adams, he asked "how she identified Pleas Kavanaugh as the suspect[,]" and she responded that it was based on a single computer-generated sketch. (DE 45-22). Zorin further attests that he specifically asked Detective Adams "is that all you have" and she responded, "yes, that's how we got him" or words to that effect. (DE 45-22). In context, Adams's statement that *she* identified Kavanaugh based on the computer-generated sketch does not prove that no photographic line-up occurred. Further, nothing in the conversation suggests that Adams was the only person to identify Kavanaugh from the computer-generated sketch. Adams's response reflects only that a single computer-generated sketch formed the basis for Adams's identification of Kavanaugh. Moreover, Adams's statement simply doesn't address how *the victims* identified Kavanaugh as the perpetrator. Thus, Zorin's affidavit, standing alone, does not demonstrate that Detectives Adams and Persley lacked probable cause to arrest and to initiate proceedings against Kavanaugh.

Plaintiff points to a second piece of evidence to support his contention that there was no photographic line-up. That is an unsworn statement Laura Baker made to public defender investigator Paula Hensinger. (DE 45-18). However, the Sixth Circuit has consistently held that "a court may not consider unsworn statements when ruling on a motion for summary judgment." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991) (citing *Akickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)). Therefore, Laura's statement cannot properly be considered by the Court to determine if plaintiff has made a showing that Detectives Adams and Persley lacked probable cause to arrest him and to initiate proceedings against him.

The evidence put forth by Kavanaugh does not show that the detectives lacked probable cause to arrest and to initiate proceedings against him. Therefore, summary judgment in favor of Detectives Adams and Persley in their individual capacities is appropriate. While plaintiff's allegations are insufficient to withstand defendants' motion for summary judgment because he has failed to establish an essential element of his claim, the Court finds it valuable to address the other elements of his claim.

### *ii. Defendants Influenced Decision to Prosecute*

Plaintiff appears to contend that Detectives Adams and Persley influenced the decision to prosecute him by affirmatively misrepresenting that they had presented a photographic line-up to Morgan and Laura. Plaintiff further asserts that Detective Adams influenced the decision to prosecute him by her grand jury testimony that she had not received the results of a DNA test from the Morgan crime scene. This claim is not supported by any evidence or logical link.

"[A]n officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the

prosecution the officer's *truthful* materials." *Sykes,* 625 F.3d at 314. The plaintiff must present evidence that the officers "(1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Gregory v. City of Louisville,* 444 F.3d 725, 758 (6th Cir. 2006).

As previously discussed, plaintiff has failed point to any evidence indicating that Detectives Adams and Persley falsely reported that Morgan and Laura had identified Kavanaugh from a photographic line-up. Additionally, plaintiff has not asserted any facts to indicate that Detective Adams "stated a deliberate falsehood or showed reckless disregard for the truth" when she testified before the grand jury that she had not received the results of the DNA test from the crime scene involving Morgan. *Id.* Even assuming that Detective Adams's testimony was untruthful because she knew the results of the DNA test, it cannot be said that her statement "was material to the finding of probable cause." *Id.* Detective Adams did not testify that the blood evidence from the crime scene matched plaintiff's DNA, but rather that the results were not available. (DE 45-5, p. 122). Moreover, Detective Adams was not concealing any exculpatory evidence because the DNA results matched only Morgan's and did not contain an unknown person's DNA. (DE 44-17). Because the grand jury's decision to indict plaintiff was based on the victims' identifications, and not on DNA evidence, Detective Adams's allegedly false statement was not material to the finding of probable cause. Therefore, summary judgment in favor of Detectives Adams and Persley in their individual capacities is also appropriate because Kavanaugh has failed to point to any evidence that either detective "made, influenced, or participated in the decision to prosecute." *Sykes*, 625 F.3d at 308.

### *iii. The Criminal Proceedings were Terminated in Plaintiff's Favor*

One case against Kavanaugh resulted in an acquittal and the other was dismissed by the prosecutor. While the acquittal is a favorable determination, the dismissal of the second case may or may not be favorable under current case law. The Court need not reach this issue, however, because Kavanaugh has not produced evidence on the first two factors, both of which are essential to his malicious prosecution claim.

## B. Violation of 42 U.S.C. § 1983 for LFUCG's Custom or Policy of Inaction and Failure to Train or Supervise the Officers

Plaintiff alleges that Chief Bastin and the LFUCG are liable for having a policy or custom of inadequately disciplining or removing officers who engage in dishonest acts and for failing to properly train and supervise officers. Plaintiff's claim fails for two reasons. First, he cannot show a violation of his constitutional rights. Second, he has not demonstrated that LFUCG had any policy or custom of inaction or failure to train or supervise its officers.

To state a claim under § 1983, a plaintiff must allege both (1) a deprivation of a constitutional right and (2) that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Kavanaugh sought to fulfill the first requirement by alleging a violation of his Fourth Amendment rights based on malicious prosecution, but, as determined above, he has failed to make a sufficient showing on this claim. He does not allege any other constitutional violation.

In addition, because Kavanaugh is seeking to establish municipal liability, he must show that the deprivation of his constitutional right was attributable to the enforcement of a municipal custom or policy. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403–04 (1997). "A plaintiff bringing a § 1983 claim against a municipality must

therefore identify the policy or custom that caused her injury." *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). A "policy" is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipal] body's officers." *Monell*, 436 U.S. at 690. "A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.' " *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 691).

Because the LFUCG does not have an express policy of inaction toward officers accused of dishonest acts or of failing to train or supervise officers, the Court must determine whether it has a custom of doing so. Here, Kavanaugh simply has not asserted any facts to indicate that LFUCG had any custom of inaction or failure to train or supervise its officers. The record does not contain any specific allegations, complaints, or suits regarding misconduct by LFUCG police officers prior to December 15, 2009 (the date Kavanaugh was arrested). Plaintiff points to the fact that both Detective Adams and Detective Persley were disciplined for misconduct by the LFUCG. However, no complaint was filed against Detective Adams until May 2010 (DE 43-26), and no complaint was filed against Detective Persley until March 2011 (DE 43-28), well after the events giving rise to this suit occurred. "While a history of past conduct is not necessary to establish municipal liability, courts are more inclined to find a 'custom' when there has been a history of complaints or similar behavior." *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 850 (E.D. Tenn. 2011) (citing *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (recognizing that proof of "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate inference for purposes of failure to train")). Therefore, to the extent that Kavanaugh asserts a claim under § 1983 for LFUCG's custom

11

or policy of inaction and failure to train or supervise the officers, summary judgment in favor of LFUCG and Chief Bastin is appropriate.

**C. State Law Malicious Prosecution Claim**

Because summary judgment has been granted in favor of the defendants on the § 1983 claims against them, only plaintiff's state law malicious prosecution claim remains for evaluation. While the Court possesses pendant jurisdiction over plaintiff's state law malicious prosecution claim under 28 U.S.C. § 1367(a), that section also provides that a district court may "decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "It is generally recognized that where . . . federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims." *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987). Where, as here, the Court has dismissed all of plaintiff's original federal claims, the Court concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), this Court will exercise its discretion and will dismiss the state law malicious prosecution claim without prejudice.

## IV. CONCLUSION

Accordingly, the Court **HEREBY ORDERS** as follows:

1. Defendants LFUCG and Ronnie Bastin's motion for summary judgment (DE 43) is **GRANTED** with respect to plaintiff's federal malicious prosecution claim and remaining § 1983 claims. Accordingly, these claims are **DISMISSED**;

2. Defendants Elizabeth Adams and William Persley's motion for summary judgment (DE 44) is **GRANTED** with respect to Plaintiff's federal malicious prosecution claim. Accordingly, this claim is **DISMISSED**;

3. Plaintiff Pleas Kavanaugh's state law malicious prosecution claim is **DISMISSED**; and

4. Plaintiff Pleas Kavanaugh's motion to strike the affidavit of Robert Gullette (DE 51) is **DENIED AS MOOT**. The Court did not consider Mr. Gullette's affidavit in resolving the current matter.

Dated November 5, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY